**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MICHAEL D. JONES,

               Plaintiff,

v.

ASSOCIATION   OF   AMERICAN
MEDICAL COLLEGES,

               Defendant.

Civil Action No. 22-1680 (EGS)

<u>**MEMORANDUM OPINION**</u>

### I.  Introduction

    Plaintiff Michael D. Jones ("Mr. Jones") brings this action
against Defendant Association of American Medical Colleges
("AAMC") under Title VII of the Civil Rights Act of 1964 ("Title
VII"), 42 U.S.C. § 2000e, *et seq.*, arising out of the
termination of his employment. Mr. Jones, a Caucasian male,
alleges that AAMC discriminated against him because of his race
and retaliated against him for taking opposing views to AAMC's
official diversity, equity, and inclusion ("DE&I") policies. *See*
Compl., ECF No. 1 at 1 ¶ 2.[1] Pending before the Court is AAMC's
Motion to Dismiss. *See* Def.'s Mot., ECF No. 4. Upon careful
consideration of Mr. Jones' complaint, the pending motion, the

---

[1] When citing electronic filings throughout this Memorandum
Opinion, the Court cites to the ECF header page number, not the
original page number of the filed document.

opposition, the reply thereto, and the applicable law, the Court
**GRANTS** AAMC's Motion to Dismiss.

## II.  Background

### A. Factual Background

The following facts reflect the allegations in the
Complaint and the documents incorporated by reference therein,[2]
which the Court assumes are true for the purposes of deciding
this motion and construes in Mr. Jones' favor. *See Baird v.
Gotbaum*, 792 F.3d 166, 169 n.2 (D.C. Cir. 2015).

---

[2] AAMC includes, as Exhibit A to its motion, Mr. Jones' Charge of
Discrimination that he filed with the D.C. Office of Human
Rights and the U.S. Equal Employment Opportunity Commission
("EEOC"). *See* Def.'s Ex. A, ECF No. 4-1 at 2-4. "Although a
court generally cannot consider matters beyond the pleadings at
the motion-to-dismiss stage, it may consider 'documents attached
as exhibits or incorporated by reference in the complaint, or
documents upon which the plaintiff's complaint necessarily
relies even if the document is produced not by the plaintiff in
the complaint but by the defendant in a motion to dismiss[.]'"
*Patrick v. Dist. of Columbia*, 126 F. Supp. 3d 132, 135-36
(D.D.C. 2015) (citation omitted). The Court can thus review Mr.
Jones' charge "without converting the motion to dismiss into one
for summary judgment[,] as it is necessarily incorporated into
the complaint." *Holston v. Yellen*, No. 20-3533 (EGS), 2022 WL
4355289, at *5 (D.D.C. Sept. 20, 2022) (citing *EEOC v. St.
Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir.
1997)); *see also* Compl., ECF No. 1 at 2 ¶ 5 (incorporating by
reference Mr. Jones' charge). To the extent Mr. Jones seeks to
argue that the present motion should be converted into a motion
for summary judgment, *see* Pl.'s Opp'n, ECF No. 6 at 5-6; the
Court rejects that argument, *see Klotzbach-Piper v. Nat'l R.R.
Passenger Corp.*, 373 F. Supp. 3d 174, 182 (D.D.C. 2019)
("Because administrative complaints are public document[s] of
which a court may take judicial notice, courts accordingly may
consider an EEOC complaint and Notice of Charge without
converting a motion to dismiss into a motion for summary
judgment." (citation and internal quotation marks omitted)).

From July 29, 2002 until June 1, 2021 when he was terminated, Mr. Jones—a Caucasian male identifying as Christian and Republican—worked for AAMC as Manager of the Service Management Information Technology Team. Compl., ECF No. 1 at 3 ¶¶ 9-10, 7 ¶ 34. With approximately 800 employees and an office based in Washington, D.C., *id.* at 3 ¶ 8; AAMC is a non-profit organization "dedicated to transforming health care through medical education, health care, medical research, and community collaborations[,]" Def.'s Mot., ECF No. 4 at 4. Mr. Jones worked for AAMC for almost twenty years as an Information Technology ("IT") subject matter expert in AAMC's organization process areas, where he was responsible for reporting on process area performance, making area performance improvements, and leading and developing a team within AAMC's IT Department. Compl., ECF No. 1 at 2 ¶ 7, 3 ¶¶ 9, 11. Mr. Jones maintained a satisfactory employment record during his time with AAMC. *Id.* at 3 ¶ 11.

AAMC maintains DE&I policies that commit it to "speaking out against all forms of racism and discrimination; employing antiracism and unconscious bias training; and moving from rhetoric to action." *Id.* at 4 ¶ 15. AAMC's values include "accepting responsibility for the oppression of minorities and eradicating racism from society." *Id.* at 7 ¶ 35. As a manager with leadership responsibilities, Mr. Jones was required by AAMC to complete various training programs regarding problem solving,

3

diversity, and Title VII. *Id.* at 3 ¶ 12. Between 2018 and 2019,
Mr. Jones completed one such training program titled "Crucial
Conversations," and as was expected of him as a team manager, he
disseminated the knowledge and tools from the training back to
his team members. *Id.* at 3-4 ¶ 13.

On June 1, 2020, AAMC published a press release on its
website titled "AAMC's Statement on Police Brutality and Racism
in America and Their Impact on Health." *Id.* at 4 ¶ 14. The press
release indicated AAMC's "determination to end racism." *Id.* at 4
¶ 15. Following media reports of police brutality, AAMC held two
townhall meetings where staff "were encouraged to express their
feelings regarding the brutality and deaths." *Id.* at 4 ¶ 16.
According to Mr. Jones, these meetings were "raw" and "emotions
ran high." *Id.* At one of these meetings, an employee "made a
comment which compared anyone not out in the streets rioting to
Nazis." *Id.* at 4 ¶ 17. This comment made Mr. Jones "extremely
uncomfortable," causing him to leave the meeting. *Id.* at 4-5 ¶
17. Following these townhalls, Mr. Jones alleges that "the
workplace had become politicized" and that he continued to do
his job but was "reticent to share his point of view" because he
did not want his co-workers "thinking that he is a Nazi because
he was not out in the streets rioting." *Id.* at 5 ¶¶ 19, 21. In
October 2020, AAMC publicly released on its website its "AAMC
Framework for Addressing and Eliminating Racism at the AAMC, in

Academic Medicine, and Beyond." *Id.* at 5 ¶ 22. This framework outlined AAMC's goal of becoming an "anti-racist, diverse, equitable, and inclusive organization." Def.'s Mot., ECF No. 4 at 4 (citing to AAMC's website). Mr. Jones alleges that AAMC did not provide training sessions for managers on this new framework. Compl., ECF No. 1 at 5 ¶ 23.

In December 2020, Mr. Jones participated in a meeting with several co-workers, including a colleague named Angelique Johnson ("Ms. Johnson"), and a subordinate member of his IT team named Dami Sotande ("Mr. Sotande"). *Id.* at 5 ¶ 24. The purpose of the meeting was to discuss an IT change request, which used the words "master and slave" as "industry terms."[3] *Id.* After the meeting, Ms. Johnson emailed Mr. Jones and Mr. Sotande to explain that she was "shocked" by the use of these terms and asked Mr. Jones to "help [her] understand the naming convention[,]" which she viewed as "non-inclusive and off-putting." *Id.* at 6 ¶ 25. Although Mr. Jones did not partake in the naming convention or have authority to change it, he responded "by stating his understanding of the term[s] outside of the racial connotations as he had used and understood the term[s] in the context of IT and his religion." *Id.* at 6 ¶¶ 26-

---

[3] Mr. Jones explained in his Charge of Discrimination that the terms "master" and "slave" are "known term[s] used to describe a relationship between two servers in the IT industry." Def.'s Ex. A, ECF No. 4-1 at 2.

27; *see* Def.'s Ex. A, ECF No. 4-1 at 2 ("I explained that the term has been widely used not only in the IT world but in religion and sex."). Ms. Johnson complained to AAMC's Human Resources ("HR") Department about Mr. Jones' response. Def.'s Ex. A, ECF No. 4-1 at 2.

Following Ms. Johnson's HR complaint, AAMC, specifically John Coleman—the Senior Director of IT Operations—issued Mr. Jones a counseling memorandum regarding his response, which stated:

> Your response to this business partner and your employee was insensitive, unprofessional and tone deaf. In your communication, you went on several tangents to support your opinion while not recognizing the fact that this business partner had shared that she was disturbed by the language and felt it was non-inclusive. Additionally, you shared other inappropriate comparisons of master/slave relationships that should have never been included in a professional email to a colleague.

*Id.*; Compl., ECF No. 1 at 6 ¶ 28. Mr. Jones was required to write an apology email to Ms. Johnson and was given the verbiage to be included in the email. Compl., ECF No. 1 at 6 ¶ 29. AAMC also told Mr. Jones not to contact Mr. Sotande. *Id.* at 6-7 ¶ 29.

Soon thereafter, in January 2021, AAMC's Chief Information Officer emailed the entire IT Department requesting that "outdated and disrespectful" industry terms like "master, slave, blacklist, whitelist, and man-hour" be replaced with "more

agreeable, inclusive, and respectable terms[,]" a directive with which Mr. Jones complied. *Id.* at 7 ¶ 30.

In the spring of 2021, Mr. Sotande transferred from Mr. Jones' team, and Mr. Jones recruited from within AAMC to replace him. *Id.* at 7 ¶¶ 31-32. On May 4, 2021, Mr. Jones introduced the new employee during a team meeting and stated that "he had stolen the employee from another team." *Id.* at 7 ¶ 33; *see* Def.'s Ex. A, ECF No. 4-1 at 2 ("I made a joke about getting one of my team members stolen from my department and stealing another to join my team."). This comment led an employee to file a complaint with HR, stating that "they were offended by [Mr. Jones'] joke because the phrase stealing employees . . . implied [he] was talking about slavery." Def.'s Ex. A, ECF No. 4-1 at 2. As a result of this second HR complaint, AAMC immediately placed Mr. Jones on paid leave. *Id.*

On June 1, 2021, Jaynee Jones, an HR representative, and Steve Harris, the Director of IT Service Management, held a conference call with Mr. Jones, during which they informed him that AAMC had terminated his employment. *Id.* On that call, they read Mr. Jones his termination letter, which stated that he had violated AAMC's Ethical Principles and Conduct Policy, requiring "[a]n ethical workplace culture" where "management lead[s] by example and exemplif[ies] AAMC's values." *Id.*; Compl., ECF No. 1

at 7 ¶ 34. He requested to appeal this decision but was informed that the decision was final. Def.'s Ex. A, ECF No. 4-1 at 2.

Based on these facts, Mr. Jones claims AAMC "discriminated against him because of his race (Caucasian/White)," and retaliated against him "for taking opposing views to management[']s official [DE&I] policies by counseling him for the use of industry terms and firing him." Compl., ECF No. 1 at 1 ¶ 2. Specifically, Mr. Jones alleges that because of AAMC's policies "that promote discrimination against non-minorities," "the interpretation of those policies, the condonation of comparing someone to a Nazi, and the condemnation of using industry terms [that may be disrespectful to minorities]," he was "vilified for the color of his skin" and "subjected to the adverse employment action of being terminated." *Id.* at 5 ¶ 19, 8 ¶¶ 39-43. Following his termination, on February 8, 2022, Mr. Jones filed a Charge of Discrimination with the D.C. Office of Human Rights ("DCOHR"), which was cross-filed with the U.S. Equal Employment Opportunity Commission ("EEOC"). *See* Def.'s Ex. A, ECF No. 4-1 at 2. On June 1, 2022, the EEOC elected not to proceed with an investigation and issued Mr. Jones a notice of right to file suit. Compl., ECF No. 1 at 2 ¶ 5.

### B. Procedural Background

On June 11, 2022, Mr. Jones filed this action, asserting Title VII claims against AAMC. *See id.* at 1 ¶¶ 1-2. On August

16, 2022, AAMC filed the present Motion to Dismiss. *See* Def.'s Mot., ECF No. 4 at 1. Mr. Jones filed his opposition brief on August 30, 2022, *see* Pl.'s Opp'n, ECF No. 6 at 1; and AAMC filed its reply on September 6, 2022, *see* Def.'s Reply, ECF No. 7 at 1. AAMC's motion is ripe and ready for the Court's adjudication.

### III. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007) (citation and internal quotation marks omitted).

Despite this liberal pleading standard, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the facts pled in the complaint allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The standard does not

amount to a "probability requirement," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"[W]hen ruling on a defendant's motion to dismiss [pursuant to Rule 12(b)(6)], a judge must accept as true all of the factual allegations contained in the complaint." *Atherton v. Dist. of Columbia Off. of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (citation omitted). "In determining whether a complaint fails to state a claim, [the Court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). In addition, the Court must give the plaintiff the "benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). However, the Court may not accept as true "the plaintiff's legal conclusions or inferences that are not supported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in the U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014).

## IV.  Analysis

AAMC advances three arguments for dismissal under Rule 12(b)(6). *See* Def.'s Mot., ECF No. 4 at 7-11. First, AAMC argues that Mr. Jones' retaliation claim should be dismissed for failure to exhaust administrative remedies, as Mr. Jones never

alleged that AAMC retaliated against him in his Charge of Discrimination. *Id.* at 7-8. Second, AAMC argues that even if Mr. Jones has exhausted his administrative remedies with respect to his retaliation claim, alternatively this claim should be dismissed for failure to allege that Mr. Jones engaged in any statutorily protected activity. *Id.* at 9. Finally, AAMC contends that Mr. Jones has not stated a discrimination claim because his complaint only pleads conclusory allegations, rather than sufficient facts from which it can be inferred that race was a motivating factor in AAMC's decision to terminate him. *Id.* at 9-11. The Court addresses each claim in turn.

### A. Mr. Jones' Retaliation Claim Cannot Withstand AAMC's Motion to Dismiss

Title VII "both prohibits employers from engaging in employment practices that discriminate on the basis of race, *see* 42 U.S.C. § 2000e-2(a), and bars them from retaliating against an employee 'because he has opposed any [such] practice,' *id.* § 2000e-3(a)." *Harris v. Dist. of Columbia Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015) (citation omitted). "In order to establish a *prima facie* case of retaliation, a plaintiff must show (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the two." *Jackson v. Dist. Hosp. Partners, L.P.*, No. 18-1978,

2019 WL 3502389, at *5 (D.D.C. Aug. 1, 2019). "[A] plaintiff need not plead each element of his *prima facie* retaliation case to survive a motion to dismiss." *Id.* However, for the reasons explained below, Mr. Jones has failed to state a claim for retaliation that can withstand AAMC's Motion to Dismiss.

### 1. Mr. Jones' Retaliation Claim Was Not Administratively Exhausted

Title VII requires that an aggrieved employee timely exhaust his administrative remedies prior to filing suit in a district court. *See Headen v. Wash. Metro. Area Transit Auth.*, 741 F. Supp. 2d 289, 294 (D.D.C. 2010); *Harris v. Gonzales*, 488 F.3d 442, 443 (D.C. Cir. 2007). The Act "provides detailed procedures for bringing administrative charges, and . . . 'specifies with precision' the prerequisites that a plaintiff must satisfy before filing suit." *Dudley v. Wash. Metro. Area Transit Auth.*, 924 F. Supp. 2d 141, 154 (D.D.C. 2013) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109, 122 S. Ct. 2061 (2002)). Specifically, Title VII requires an aggrieved employee to file a charge with the EEOC within 180 days "after the alleged unlawful employment practice occurred," but extends this period to 300 days if the individual "initially instituted proceedings with a State or local agency." *Dieng v. Am. Insts. for Rsch. in the Behav. Scis.*, 412 F. Supp. 3d 1, 12 (D.D.C. 2019) (citing 42 U.S.C. § 2000e-5(e)(1)).

12

The employee's administrative complaint must allege that
the employer engaged in unlawful conduct within the applicable
time period, *see Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 263,
276 (D.D.C. 2011); as the "charge requirement serves the
important purposes of giving the charged party notice of the
claim and 'narrow[ing] the issues for prompt adjudication and
decision[,]'" *Park v. How. Univ.*, 71 F.3d 904, 907 (D.C. Cir.
1995) (quoting *Laffey v. Nw. Airlines, Inc.*, 567 F.2d 429, 472
n.325 (D.C. Cir. 1976)). While not "a heavy technical burden,"
"it is also true that the requirement of some specificity in a
charge is not a mere technicality." *Id.* (citation and internal
quotation marks omitted). In meeting this requirement, "[a]
claimant is not necessarily limited to the boxes selected in the
administrative complaint as the basis for the claim if his
written explanation can provide a basis for identifying the
nature of his claims." *Ndondji*, 768 F. Supp. 2d at 276 (citing
*Robinson-Reeder v. Am. Council on Educ.*, 532 F. Supp. 2d 6, 13
(D.D.C. 2008), *aff'd*, 417 F. App'x 4 (D.C. Cir. 2011)); *see also
Maryland v. Sodexho, Inc.*, 474 F. Supp. 2d 160, 162 (D.D.C.
2007) (explaining that an employee "can merely check" the
applicable "boxes" on the charge form, but if he is "uncertain
of the cause of discrimination . . . , he need only describe it
in the text" of the form); *Johnson-Parks v. D.C. Chartered
Health Plan*, 806 F. Supp. 2d 267, 270 (D.D.C. 2011) (noting that

employees are not required to use "magic words" to make out a
proper charge but instead must "alert the EEOC and the charged
employer with the nature of the alleged wrongdoing").

Additionally, the employee may amend the administrative
charge "at any time prior to the conclusion of the agency's
investigation," but is required to sue in federal court within
ninety days following notice of the agency's final action. *Mount
v. Johnson*, 36 F. Supp. 3d 74, 83 (D.D.C. 2014). The theories
advanced in the employee's lawsuit are thereafter "limited to
the theories contained in the EEOC Charge he filed[,]" and
"[a]ny other theories are barred unless the claim is 'like or
reasonably related to the allegations of the charge and growing
out of such allegations.'" *Marcelus v. Corr. Corp. of Am./Corr.
Treatment Facility*, 540 F. Supp. 2d 231, 236 (D.D.C. 2008)
(citation omitted); *Park*, 71 F.3d at 907 ("At a minimum, the
Title VII claims must arise from the administrative
investigation that can reasonably be expected to follow the
charge of discrimination." (citation and internal quotation
marks omitted)). Moreover, "as a general rule, a Title VII
plaintiff must timely exhaust administrative remedies for each
discrete act [of discrimination or retaliation] alleged[,] even
if the acts are related." *Mount*, 36 F. Supp. 3d at 83-84
(citation and internal quotation marks omitted); *see Morgan*, 536
U.S. at 113. Courts are prohibited from "allow[ing] liberal

14

interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process[,]" and "[d]ismissal is required when a plaintiff fails to exhaust his administrative remedies with respect to particular claims." *Ndondji*, 768 F. Supp. 2d at 276-77.

Here, AAMC argues that Mr. Jones failed to administratively exhaust his retaliation claim because his charge only checked the boxes for discrimination based on race and age and did not allege that AAMC retaliated against him, or that he had engaged in any protected conduct, "such as complaining to the [HR] Department or filing reports against his supervisors." Def.'s Mot., ECF No. 4 at 6-8. Mr. Jones claims he has exhausted his administrative remedies because his retaliation claim "arises from two incidents which are described in the particulars [section] of his EEOC complaint form[:]" (1) his response in "opposition to" Ms. Johnson's email about the "non-inclusive" "master/slave" industry terminology; and (2) "the resulting corrective action by AAMC's [HR Department] requiring [him] to issue a formal apology for his response[.]" Pl.'s Opp'n, ECF No. 6 at 9-10. Mr. Jones claims that these "particulars" should support "a finding of retaliation at [ ] least to defeat a motion to dismiss" since they are "factually similar" to his discrimination claims and "would be discovered during the agency's investigation[,]" even though the box for retaliation

"was unchecked." *Id.* at 10 (citing *Mount*, 36 F. Supp. 3d at 85-88). In considering these arguments, the Court notes that "[w]here, as here, the defendant alleges a failure to exhaust administrative remedies under Title VII[,]" it may consider, "in addition to the pleadings, . . . [the] [p]laintiff's EEOC Complaint and Notice of Charge . . . without converting the motion[] to dismiss" into one for summary judgment because these are "public document[s] of which [the C]ourt may take judicial notice[.]" *Latson v. Holder*, 82 F. Supp. 3d 377, 386 (D.D.C. 2015) (citation omitted); *see also Holston v. Yellen*, No. 20-3533 (EGS), 2022 WL 4355289, at *5 (D.D.C. Sept. 20, 2022).

"Presuming the truth of the allegations in [Mr. Jones'] complaint and drawing all inferences in his favor," the Court concludes that he has failed to exhaust his administrative remedies as to his retaliation claim. *See Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 68 (D.D.C. 2007). While Mr. Jones could have properly exhausted his retaliation claim by "either checking the box on the charge for retaliation or describing conduct constituting retaliation[,]" Def.'s Mot., ECF No. 4 at 7 (citing *Robinson-Reeder*, 532 F. Supp. 2d at 13-14); his charge does not check the retaliation box and only indicates that he "was discriminated against on the basis of [his] race (White) in violation of Title VII" and "on the basis of [his] age (53 years old)[,]" Def.'s Ex. A, ECF No. 4-1 at 3. Nowhere in the factual

16

allegations of his charge does Mr. Jones "express or event hint
at" a retaliation claim, as he merely summarizes the series of
events that led to his termination, noting that: (1) AAMC's HR
Department "met with [him] to discuss [Ms. Johnson's complaint]"
and asked him to send a written apology, "which [he] did[;]" and
(2) he was placed "on paid leave" and later "terminated"
following a coworker's complaint to HR regarding his joke about
stealing a new team member from another department. *Park*, 71
F.3d at 907; Def.'s Ex. A, ECF No. 4-1 at 2. Not only does Mr.
Jones' charge "lack[] the words" "retaliation" or "retaliatory,"
but this summary of the "particulars" does not "provide the
slightest hint" that Mr. Jones viewed any of these incidents as
retaliatory acts, as opposed to discriminatory acts, which he
does specify in his charge. *See Park*, 71 F.3d at 908; *Robinson-
Reeder*, 532 F. Supp. 2d at 13. Thus, "[a] fair characterization
of [Mr. Jones'] EEOC Charge does not incorporate a charge of
retaliation." *Robinson-Reeder*, 532 F. Supp. 2d at 14; *see also
Brown v. Dist. of Columbia*, 251 F. Supp. 2d 152, 162 (D.D.C.
2003) (dismissing retaliation claim for failed exhaustion when
the plaintiff "checked only the boxes" for discrimination based
on race and disability, and there was "absolutely no indication"
of retaliation allegations in her charge); *Hunt v. Dist. of
Columbia Dep't of Corr.*, 41 F. Supp. 2d 31, 36 (D.D.C. 1999)
(finding that the plaintiff failed to exhaust her administrative

remedies when she "specifically checked the boxes for age discrimination and retaliation," but not gender discrimination, and did not otherwise indicate that "she was alleging gender discrimination"); *Latson*, 82 F. Supp. 3d at 387 (dismissing age discrimination claim for failure to exhaust when the plaintiff neither checked that box on the charge, "nor provided any factual details in her written explanation to suggest that she intended to assert" that claim); *Sisay v. Greyhound Lines, Inc.*, 34 F. Supp. 2d 59, 64 (D.D.C. 1998) (finding failed exhaustion when there was no "indication of a claim of national origin discrimination either in the form of express words or factual allegations that would support such a claim"); *Park*, 71 F.3d at 908 (same conclusion for a hostile work environment claim).

Moreover, as AAMC argues, "[d]iscrimination claims are distinct from retaliation claims under Title VII," Def.'s Mot., ECF No. 4 at 8; as that Act requires plaintiffs to timely exhaust their administrative remedies for "each discrete act" of discrimination and retaliation alleged, *Mount*, 36 F. Supp. 3d at 83-84; *see also Morgan*, 536 U.S. at 114 (holding that "[e]ach incident" of discrimination and retaliation "constitutes a separate actionable 'unlawful employment practice'" for which an administrative charge must be filed). "[R]aising discrimination claims before the EEOC is [therefore] not sufficient to warrant" exhaustion of a retaliation claim because these two discrete

claims "must be raised independently if the retaliation occurred
prior to the filing of the administrative charge." *Ndondji*, 768
F. Supp. 2d at 278-79 (dismissing the plaintiff's retaliation
claim when he "never expressed or described any belief" in his
charge that his employer had engaged in retaliatory behavior and
prohibiting the addition of retaliation claims for the first
time in a Title VII suit); *see also Ponce v. Billington*, 652 F.
Supp. 2d 71, 73-74 (D.D.C. 2009) (finding the plaintiff failed
to exhaust his retaliation claim when he did not allege that
claim in his charge, and retaliation is not "like or reasonably
related to" a discrimination claim); *Marcelus*, 540 F. Supp. 2d
at 236 (noting that the "only theories mentioned in [the
plaintiff's] EEOC charge . . . were age and national origin[,]"
and absent any indication of a retaliation theory, such as
"making past complaints about discrimination, or filing prior
incident reports against co-workers and supervisors[,]" his
retaliation claim was "not 'like or reasonably related to' the
allegations in his EEOC Charge"); *Rattigan*, 503 F. Supp. 2d at
69 (concluding that the plaintiff failed to exhaust his
administrative remedies for his retaliation claim, which was not
"within the scope of 'the administrative investigation that
[could] reasonably be expected to follow'" his charge); *Payne v.
Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010) (affirming dismissal
of the plaintiff's retaliation claim since this claim "could not

possibly have 'arisen from the administrative investigation' that followed" the filing of her charge).

Because of the absence of allegations in Mr. Jones' charge positing a theory of retaliation, or any facts indicating he complained to HR about retaliation or filed reports against co-workers or supervisors, the Court concludes that Mr. Jones has failed to exhaust his administrative remedies for his discrete retaliation claim.[4] *See Ndondji*, 768 F. Supp. 2d at 279; *Marcelus*, 540 F. Supp. 2d at 236; *Morgan*, 536 U.S. at 113. Accordingly, Mr. Jones' retaliation claim under Title VII cannot withstand AAMC's Motion to Dismiss and must fail.

---

[4] Mr. Jones attempts to argue that "his retaliation claim arises from factually similar allegations" in his charge, and so, "regardless if it was separately alleged[,]" it should satisfy the administrative exhaustion requirement. Pl.'s Opp'n, ECF No. 6 at 2. To support this argument, he cites to language from *Mount v. Johnson*, 36 F. Supp. 3d 74 (D.D.C. 2014) indicating that allegations "put before the agency" and "new allegations" can both proceed if they "are factually similar such that they would be discovered during the agency's investigation." 36 F. Supp. 3d at 85-86. However, this language is inapposite here, as *Mount* was comparing claims "based on events that occur [before and] after the filing of an administrative charge." *Id.* at 85. In Mr. Jones' case, none of his claims are based on events that occurred *after* the filing of his charge, and thus, "at a minimum, he must have raised his *pre-charge* retaliation allegations with the EEOC to exhaust his administrative remedies[.]" *See Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 263, 278 (D.D.C. 2011) ("Retaliation claims that occurred prior to the filing of a claim must be administratively exhausted."); *Pyne v. Dist. of Columbia*, 298 F. Supp. 2d 7, 12 (D.D.C. 2002) (labeling it a "prerequisite" to bring a retaliation charge before the EEOC if the retaliation occurred prior to the filing of the charge).

### 2. Mr. Jones Has Not Alleged That He Engaged in Statutorily Protected Activity Under Title VII, As Is Required to State a Retaliation Claim

AAMC next argues that even if Mr. Jones has exhausted his administrative remedies as to his retaliation claim, this claim should still be dismissed "for failure to allege that he engaged in a statutor[ily] protected activity." Def.'s Mot., ECF No. 4 at 9. In contrast, Mr. Jones argues that he engaged in protected activity by sending a response email to his colleague, Ms. Johnson, in which he "express[ed] his opposition to cancel culture interpretation of industry standard terms as a practice of his [Republican] political affiliation," which he claims is a "protected trait" under the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01, *et seq.*[5] *See* Pl.'s Opp'n, ECF No. 6 at 10-12. He adds that his affiliations as "a conservative Christian and member of the Republican party" were "known to his coworkers" and that "his opposition [in his email] to adopting the subjective view of the [master/slave] term[s] as non-inclusive was an expression of his concern about the

---

[5] Under the DCHRA, it is "an unlawful discriminatory practice to coerce, threaten, retaliate against, or interfere with any person in the exercise or enjoyment of, or on account of having exercised or enjoyed, or on account of having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected under this chapter." D.C. Code. § 2-1402.61. In addition, the DCHRA makes it unlawful for employers to discriminate based on an employee's "political affiliation," *id.* § 2-1402.11(a); defined as "the state of belonging to or endorsing any political party[,]" *id.* § 2-1401.02(25).

politicized cancel culture within AAMC." *Id.* at 9-11. Mr. Jones claims that this opposition was "protected conduct" under the DCHRA and that he was "punish[ed]" for not adopting "the dynamic subjective view" of these terms when AAMC issued him a "corrective action" counseling memorandum following his email to Ms. Johnson and required him to formally apologize to her. *Id.* at 10-12. AAMC replies by noting that Mr. Jones "devotes the bulk of his Opposition to explaining how he has a viable claim for retaliation on the basis of political affiliation under the [DCHRA]—a claim not alleged in either the Complaint or the EEOC Charge[,]" and therefore "fails to explain his failure to exhaust administrative remedies with respect to his retaliation claim under Title VII." Def.'s Reply, ECF No. 7 at 1. Instead, AAMC claims that Mr. Jones improperly "attempts to convert his race retaliation claim into a political affiliation claim under the [DCHRA,]" a claim which is "time-barred." *Id.*

As an initial matter, the Court rejects Mr. Jones' attempt in his opposition brief to supplement his existing Title VII claims with "a brand new theory of liability and new facts[,]" *Hawkins v. Wash. Metro. Area Transit Auth.*, 311 F. Supp. 3d 94, 109 (D.D.C. 2018); namely a political affiliation retaliation claim under the DCHRA, *see* Pl.'s Opp'n, ECF No. 6 at 9-12. First, Mr. Jones failed to plead such a claim, as his complaint includes just one count for race discrimination and retaliation

under Title VII. *See* Compl., ECF No. 1 at 1 ¶ 1, 8 ¶¶ 37-44. As
such, the Complaint does not, on its face, state a claim under
the DCHRA, and "[t]hat omission is fatal because a 'plaintiff
cannot add a new claim through an opposition brief.'" *Billups v.
Lab'y Corp. of Am.*, 233 F. Supp. 3d 20, 25 (D.D.C. 2017)
(quoting *Williams v. Spencer*, 883 F. Supp. 2d 165, 181 n.8
(D.D.C. 2012) (collecting cases)); *see also BEG Invs., LLC v.
Alberti*, 85 F. Supp. 3d 13, 26 (D.D.C. 2015) ("Because 'a
complaint may not be amended by the briefs in opposition to a
motion to dismiss,' *Coleman v. Pension Benefit Guar. Corp.*, 94
F. Supp. 2d 18, 24 n.8 (D.D.C. 2000), the Court was unable to
consider those new facts when ruling on Defendants' motion to
dismiss."). Here, Mr. Jones' opposition brief contains new facts
not appearing in the Complaint about his email response to Ms.
Johnson that allegedly included reference to "his opposition to"
"cancel culture['s] interpretation of industry standard terms"
as part of his political affiliation and beliefs as a
Republican—all new facts which the Court may not now consider.
*See* Pl.'s Opp'n, ECF No. 6 at 10-12. Mr. Jones "cannot overcome
a 12(b)(6) motion by adding new information, much less a new
cause of action, in a brief[,]" and should he wish to add a
claim under the DCHRA, the proper course of action is to move
for leave to amend his complaint pursuant to Federal Rule of
Civil Procedure Rule 15(a). *Hawkins*, 311 F. Supp. 3d at 109.

Even considering Mr. Jones' new claims and factual allegations proffered in his opposition briefing, a DCHRA political affiliation claim would nonetheless fail. The DCHRA requires that "[a] private cause of action . . . be filed . . . within one year of the unlawful discriminatory act, or the discovery thereof," but "[t]he timely filing of a complaint with the [DCOHR] . . . toll[s] the running of the statute of limitations while the complaint is pending." D.C. Code § 2-1403.16(a). Here, Mr. Jones claims that AAMC issued him "a corrective action memorandum on or about December 23, 2020, in response to [his] email sent on December 17, 2020." *See* Pl.'s Opp'n, ECF No. 6 at 10, 12 (alleging a "clear causal nexus" between his "opposition" email to Ms. Johnson and AAMC's issuance of a counseling memorandum that he argues should support his retaliation claim). Yet, Mr. Jones did not file his charge until February 8, 2022—more than a year after the alleged "unlawful discriminatory act"—and thus any political affiliation claims relating to these events are time-barred under the DCHRA. *See* D.C. Code § 2-1403.16(a); Def.'s Reply, ECF No. 7 at 6.

As such, the Court proceeds with analyzing whether Mr. Jones engaged in statutorily protected activity as defined by Title VII, which does not include "political affiliation" as a protected class. *See* 42 U.S.C. § 2000e-2(a)(1) (prohibiting discrimination based solely on "race, color, religion, sex, or

national origin"). The Court also agrees with AAMC that the only
relevant documents in this analysis are Mr. Jones' complaint and
his Charge of Discrimination, *see* Def.'s Reply, ECF No. 7 at 4;
neither of which include factual allegations about Mr. Jones'
email response expressing "his opposition to the subjective
interpretation of the Master/Slave term[,]" Pl.'s Opp'n, ECF No.
6 at 11. To the extent Mr. Jones seeks to reference details from
this email exchange and incorporate new factual allegations as
to his political affiliation, the Court is "unable to consider
those new facts" when ruling on AAMC's Motion to Dismiss.[6]
*Alberti*, 85 F. Supp. 3d at 26; *see* Pl.'s Opp'n, ECF No. 6 at 9,
11 (incorporating specific wording from Mr. Jones' email to Ms.
Johnson, along with outside data regarding "cancel culture"—both
of which the Court must disregard). Thus, the only remaining
question as to Mr. Jones' Title VII retaliation claim is
whether, presuming the truth of the allegations in his complaint

---

[6] As AAMC notes, Mr. Jones references his email response to Ms.
Johnson as "Exhibit B (Email Exchange)," although no such
exhibit "was attached to either the Complaint or the
Opposition." Def.'s Reply, ECF No. 7 at 4 n.1; Pl.'s Opp'n, ECF
No. 6 at 9-11. Even if Mr. Jones meant to in fact attach this
exhibit, the Court could not consider such a matter "outside the
pleadings" without converting AAMC's Motion to Dismiss into a
motion for summary judgment, which the Court declines to do. *See*
Fed. R. Civ. P. 12(d); *see also* Def.'s Reply, ECF No. 7 at 4
(noting that the proposed exhibit was also not incorporated by
reference in the Complaint or relied upon in the Complaint but
was "absent" from it); *Patrick*, 126 F. Supp. 3d at 135-36.

and charge and drawing all inferences in his favor, he has alleged that he engaged in statutorily protected activity.

To state a claim for retaliation under Title VII, Mr. Jones must allege that: (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse action by AAMC; and (3) a causal link connects the two. *See Carter-Frost v. Dist. of Columbia*, 305 F. Supp. 3d 60, 73 (D.D.C. 2018) (citing *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009)). While no "magic words" are required to allege a statutorily protected activity, "the complaint must in some way allege unlawful discrimination, not just frustrated ambition." *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006). Title VII's anti-retaliation provision specifically outlines what constitutes a "protected activity." *Robinson-Reeder*, 532 F. Supp. 2d at 14. The first prong, known as "the opposition clause," makes it unlawful for an employer to discriminate against an employee "because he has opposed" an unlawful employment practice. *Id.* (quoting 42 U.S.C. § 2000e-3(a)). The second prong, known as "the participation clause," makes it unlawful for an employer to discriminate against an employee for his "participation in a discrimination charge, investigation, or proceeding." *Id.*; *Burton v. Batista*, 339 F. Supp. 2d 97, 114 (D.D.C. 2004) (citing § 2000e-3(a)). In sum, "[a]n activity is protected if it involves opposing alleged discriminatory

26

treatment by the employer or participating in legal efforts against the alleged treatment[,]" *Globus v. Skinner*, 721 F. Supp. 329, 334 (D.D.C. 1989), *aff'd*, No. 90-5020, 1990 WL 123927 (D.C. Cir. Aug. 13, 1990); and objections or complaints "unconnected to any asserted violation of the antidiscrimination laws" do not suffice, *Liu v. Geo. Univ.*, No. 22-157, 2022 WL 2452611, at *8 (D.D.C. July 6, 2022).

Because Mr. Jones does not allege discrimination based on participation in an investigation, proceeding, or hearing under Title VII, his claims are properly assessed under the opposition clause. To come within that clause, "one must demonstrate an objectively reasonable belief that the practice 'opposed' actually violated Title VII[.]" *Burton*, 339 F. Supp. 2d at 114. However, nowhere in his complaint or charge does Mr. Jones claim that he opposed an unlawful employment practice. Regarding his email to Ms. Johnson, Mr. Jones only alleges that he "responded by stating his understanding of the [master/slave] term[s] outside of the racial connotations as he had used and understood [them] in the context of IT and his religion." Compl., ECF No. 1 at 6 ¶ 27.[7] According to these factual allegations, Mr. Jones simply stated his beliefs regarding the master/slave terminology

---

[7] The language in Mr. Jones' charge is similar: "I explained that the term has been widely used not only in the IT world but in religion and sex. Ms. Johnson complained to [HR] about my response." Def.'s Ex. A, ECF No. 4-1 at 2.

and did not allege the existence of unlawful conduct by AAMC. For example, Mr. Jones does not claim that he "voiced any concerns about any discriminatory actions" by AAMC based on his race, either in his response to Ms. Johnson, or afterwards by filing a complaint of discrimination with AAMC's HR Department. *Robinson-Reeder*, 532 F. Supp. 2d at 14; *see also Ndondji*, 768 F. Supp. 2d at 279 (dismissing a retaliation claim when the plaintiff did not allege that he complained to management or HR); *Marcelus*, 540 F. Supp. 2d at 236 (same for an employee who did not make a past complaint about discrimination).

Nor does Mr. Jones contend that AAMC acted in a retaliatory manner following the email incident, *Robinson-Reeder*, 532 F. Supp. 2d at 14; as he merely indicates that he "was counseled for his response[,]" which involved an "insensitive, unprofessional" tone and "inappropriate comparisons of master/slave relationships that should never have been included in a professional email to a colleague[,]" Compl., ECF No. 1 at 6 ¶ 28. At most, Mr. Jones appears to be complaining about being forced to write an apology to Ms. Johnson, *id.* at 6 ¶ 29; or expressing "frustrated ambition" with AAMC's cultural values and policies, but "without mentioning discrimination or otherwise indicating that [race, or another Title VII protected ground,] was an issue, [this] does not constitute protected activity," *Broderick*, 437 F.3d at 1232; *see also Liu*, 2022 WL 2452611, at

\*8 (dismissing retaliation claim where the plaintiff made email comments to his employer that equated "to little more than 'frustrated ambition'" rather than opposition to "any type of unlawful discrimination"); *Robinson-Reeder*, 532 F. Supp. 2d at 14 (same for a plaintiff who seemed to be only "complaining about the effects of nepotism" at her company); *King v. Jackson*, 468 F. Supp. 2d 33, 38 (D.D.C. 2006), *aff'd*, 487 F.3d 970 (D.C. Cir. 2007) (same where the plaintiff did "not allege that his opposition was directed at any act of employment discrimination allegedly taken by the defendant"); *Logan v. Dep't of Veteran Affs.*, 404 F. Supp. 2d 72, 77 (D.D.C. 2005) (same for a plaintiff who wrote a letter about her employer's management practices and filed a grievance regarding her medical care but did not "include a claim of discrimination based upon" a protected ground under Title VII).

Therefore, Mr. Jones' retaliation claim, in addition to being dismissed for failure to exhaust administrative remedies, is also subject to dismissal because Mr. Jones "has not alleged a sufficient protected activity to provide the foundation for a retaliation claim."[8] *Robinson-Reeder*, 532 F. Supp. 2d at 14.

---

[8] In its reply brief, AAMC argues that Mr. Jones' retaliation claim should also fail because he "does not allege [that] he suffered an adverse action due to emailing Ms. Johnson." Def.'s Reply, ECF No. 7 at 5. Because the Court has already concluded that Mr. Jones' retaliation claim must be dismissed, it need not discuss this additional argument. Moreover, the Court does not

## B. Mr. Jones' Discrimination Claim Cannot Withstand AAMC's Motion to Dismiss

To bring an actionable discrimination claim under Title VII, Mr. Jones must allege that: "(1) [he] is a member of a protected class; (2) [he] suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Stella v. Mineta,* 284 F.3d 135, 145 (D.C. Cir. 2002) (citation omitted). "Although it is well-established that an employment discrimination plaintiff is not required to plead every fact necessary to establish a prima facie case to survive a motion to dismiss, [he] must nevertheless plead sufficient facts to show a plausible entitlement to relief." *Jones v. Ottenberg's Bakers, Inc.*, 999 F. Supp. 2d 185, 191 (D.D.C. 2013) (citations and internal quotation marks omitted). "Even at the motion-to-dismiss stage, conclusory allegations . . . 'are not entitled to the presumption of truth.'" *See Johnson v. Dist. of Columbia*, 49 F. Supp. 3d 115, 121 (D.D.C. 2014) (quoting *Iqbal*, 556 U.S. at 679) (dismissing a plaintiff's Title VII claim when the court was left with "wholly conclusory" allegations after "presuming [the] (limited) factual allegations to be true").

It is undisputed that Mr. Jones' complaint alleges the first two elements of a prima facie discrimination case by

---

consider arguments raised for the first time in a reply brief. *Carter v. Geo. Wash. Univ.*, 387 F.3d 872, 883 (D.C. Cir. 2004).

asserting that he is "Caucasian/White" and that he "received a
termination letter" and was "fired." Compl., ECF No. 1 at 1 ¶ 2,
7 ¶ 34, 8 ¶ 36; *see Douglas v. Donovan*, 559 F.3d 549, 552 (D.C.
Cir. 2009) ("An adverse employment action is a significant
change in employment status, such as hiring[ or] firing[.]"
(citation and internal quotation marks omitted)). However, AAMC
contends that Mr. Jones' discrimination claim must be dismissed
for failure to state a claim upon which relief can be granted
because he has not alleged facts that give rise to an inference
of discrimination and has instead only stated "conclusory
statements and legal conclusions." Def.'s Mot., ECF No. 4 at 9-
11. Mr. Jones argues that the Complaint sets forth enough facts
establishing that he was terminated "because of his race as a
Caucasian" by alleging that "[o]ne can infer that had a non-
Caucasian employee of the same position" joked about stealing a
team member from another department like he did, "their words
would not be interpreted as 'talking about slavery' and a
demonstration of a lack [of] self-awareness in violation of
AAMC's policy." *See* Pl.'s Opp'n, ECF No. 6 at 12-13 (noting that
his termination letter accused him of violating the AAMC Ethical
Principles and Conduct Policy). The Court disagrees with Mr.
Jones that he has alleged sufficient facts to plausibly suggest
that AAMC's actions "taken against [him] were motivated by

racial animus." *See Harris v. Mayorkas*, No. 21-cv-1083, 2022 WL
3452316, at *5 (D.D.C. Aug. 18, 2022).

"[A]n inference of discrimination can be established
through allegations that the plaintiff was 'treated differently
from similarly situated employees who are not part of the
protected class.'" *Id.* (quoting *George v. Leavitt*, 407 F.3d 405,
412 (D.C. Cir. 2005)). In cases, like here, "[w]here a plaintiff
seeks an inference of discrimination based on 'disparate
treatment,'" *Budik v. How. Univ. Hosp.*, 986 F. Supp. 2d 1, 7
(D.D.C. 2013); he "must plead sufficient facts to raise a
plausible inference that all of the relevant aspects of [his]
employment situation were nearly identical to those of the other
employees who did not suffer similar adverse employment
actions[,]" *Harris*, 2022 WL 3452316, at *5 (citation and
internal quotation marks omitted); *see also Neuren v. Adduci,
Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995)
(concluding that the plaintiff "offered no evidence to
demonstrate" similarity of situations between her and a male
employee and "thus failed to demonstrate disparate treatment").

Here, Mr. Jones' claim fails to meet these standards, as
his complaint is "devoid of any [ ] factual material" supporting
"a plausible inference of race discrimination." *Harris*, 2022 WL
3452316, at *6. Nowhere in his complaint does he proffer factual
allegations describing "any comparator employees [outside of his

race], how they were similarly situated, or how they were treated differently than [him]." *Id.* Only in his opposition brief does he seek to make comparisons to "a non-Caucasian employee of the same position," Pl.'s Opp'n, ECF No. 6 at 13; but he does not actually identify any such employees and certainly does not allege specifics about their job titles, experiences, levels of seniority, or even their exact races, *see Budik*, 986 F. Supp. 2d at 7 ("Because the plaintiff[, an African American,] has alleged no facts other than the ambiguous job title of 'co-worker'" to compare her employment situation to that of her former Caucasian co-worker, "she has failed to state a claim for disparate treatment discrimination, and the Court must therefore dismiss that claim."). Instead, Mr. Jones generally states that "[o]ne can infer that had a non-Caucasian employee of the same position" used his exact phrasing about stealing a team member from another department, they would have been treated differently than him, and "their words would not [have been] interpreted as 'talking about slavery[.]'" Pl.'s Opp'n, ECF No. 6 at 13. He then writes: "For that reason, there is an inference that AAMC has taken adverse action against Mr. Jones on the basis of his race." *Id.* However, by offering no facts to support these statements and simply concluding that "[o]ne can infer" racial discrimination from comparing him to an unspecified "non-Caucasian employee of the same position[,]"

*id.*; Mr. Jones has rendered his discriminatory allegations "just
[ ] legal conclusion[s]—and a legal conclusion is never
enough[,]" *Harris*, 2022 WL 3452316, at *6 (citation omitted);
*see also SS & T, LLC v. Am. U.*, No. 19-721, 2020 WL 1170288, at
*5 (D.D.C. Mar. 11, 2020) (calling the plaintiff's race-based
discrimination claim "too threadbare to state a claim" when it
failed "to identify any of the other businesses . . .  or the
race of the other business owners," and did not "explain how
those businesses were similarly situated yet treated
differently"); *Bekkem v. Wilkie*, 915 F.3d 1258, 1275 (10th Cir.
2019) (noting that a plaintiff's bare assertion of "differential
treatment of similarly situated employees" is "too conclusory to
permit a reasonable inference of" discrimination). Such
conclusory allegations, along with inferences not supported by
the factual allegations, "are not entitled to the assumption of
truth." *Iqbal*, 556 U.S. at 679; *cf. Williams v. Dist. of
Columbia*, 317 F. Supp. 3d 195, 200 (D.D.C. 2018) (concluding
that the plaintiff's discrimination claim could survive a motion
to dismiss when he "provide[d] considerable detail" in his
complaint, "pointing to specific dates on which purportedly
discriminatory interactions occurred and naming specific
individuals involved").

   Most of Mr. Jones' allegations are "wholly conclusory."
*Johnson*, 49 F. Supp. 3d at 121. For example, he states in the

Complaint and Opposition that "AAMC's leadership used phrases
and ideology that required nonminority employees to accept their
role in racism, including the privilege that comes with being a
nonminority." Pl.'s Opp'n, ECF No. 6 at 13 (citing Compl., ECF
No. 1 at 5 ¶ 18). He also alleges that AAMC "has developed" and
"interpreted policies to promote discrimination against non-
minorities." Compl., ECF No. 1 at 8 ¶¶ 39-40. Yet, Mr. Jones
"does not specify what those allegedly discriminatory policies
are, or how [they] related to his termination[,]" nor does he
offer factual allegations regarding how any such policies,
including AAMC's Ethical Principles and Conduct Policy, were
applied differently to employees of differing races. Def.'s
Mot., ECF No. 4 at 10. Instead, he merely alleges that one can
"interpret[]" that his termination resulted from "a lack of
self-awareness of his race as a Caucasian" because AAMC's
policies held him, as a "non-minorit[y,] to impossible standards
and foster[ed] a culture of overwhelming White Guilt." Pl.'s
Opp'n, ECF No. 6 at 13; *see also* Compl., ECF No. 1 at 8 ¶¶ 41-43
(claiming Mr. Jones was terminated because of AAMC's "support of
minorities" that "created a work environment that condoned . . .
comparing someone to a Nazi" and "condemned the use of industry
terms that may be disrespectful to minorities"). These are all
conclusory allegations that Mr. Jones fails to causally tie to
his termination and thus do not support an inference of racial

discrimination. As AAMC notes, that Mr. Jones may have "personal disagreement" with AAMC's policies and his co-workers' comments in townhalls is insufficient to establish a race discrimination claim under Title VII. Def.'s Mot., ECF No. 4 at 4, 10-11; *see Harris*, 2022 WL 3452316, at *7-8 (noting that "courts have recognized that [ ] generalized statements of racial friction are insufficient to sufficiently allege discriminatory intent" and concluding that "a generalized opinion" about "racial and social tension" in the plaintiff's office did not create an inference of discrimination). Thus, "stripping away [Mr. Jones'] conclusory allegations," and presuming the remaining "(limited) factual allegations to be true," the Court concludes that Mr. Jones has failed to state a racial discrimination claim under Title VII. *Johnson*, 49 F. Supp. 3d at 121. Accordingly, Mr. Jones' discrimination claim under Title VII cannot withstand AAMC's Motion to Dismiss and must fail.

## V.   Conclusion

For the foregoing reasons, AAMC's Motion to Dismiss, ECF No. 4, is **GRANTED**. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

>    Signed:   **Emmet G. Sullivan**
>              **United States District Judge**
>              **March 2, 2023**